UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 7:08-CR-28-KKC-HAI-8 |
| | ) | No. 7:11-CV-7187-KKC-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| MANUEL RAY JONES, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On October 31, 2011, Movant Manuel Ray Jones, proceeding pro se, filed a motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (D.E. 399).[1] On January 23, 2012, the United States filed a motion to dismiss Movant's § 2255 motion on the basis that Movant "entered a knowing and voluntary guilty plea and he waived his right to appeal and collaterally attack his guilty plea, conviction, and sentence."  (D.E. 405).  Movant filed a response to the Government's motion to dismiss on February 2, 2012.  (D.E. 408).  The Court ordered that any reply be filed by March 8, 2012.  (D.E. 409).  No reply has been filed, and the motion to dismiss (D.E. 405) is ripe for review.  For the reasons that follow, the Court finds that Movant's claims are foreclosed by the waiver provision of his plea agreement.  Therefore, the Court **RECOMMENDS** that the Government's motion to dismiss (D.E. 405) be **GRANTED**, and Movant's motion to vacate pursuant to § 2255 (D.E. 399) be **DENIED** with prejudice.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002).  Here, Jones affirmed under penalty of perjury that he placed the Motion in the prison mailing system on October 31, 2011.

# I. BACKGROUND

On September 24, 2008, a federal grand jury returned an indictment charging Movant with conspiracy to distribute oxycodone, methadone, and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, distributing and possessing with intent to distribute oxycodone in violation of 21 U.S.C. § 841(a)(1), and possessing firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c). (D.E. 10). On May 28, 2009, Movant pled guilty to one count of conspiracy to distribute oxycodone and one count of possessing firearms in furtherance of drug trafficking crimes. (*See* D.E. 222, 309). Movant's guilty plea was accepted by the Court. (*Id.*).

District Judge Caldwell conducted a sentencing hearing on September 17, 2009. (*See* D.E. 308). Ultimately, Judge Caldwell sentenced Movant to a term of imprisonment of 84 months, with a 5-year term of supervised release to follow. (D.E. 309 at 2-3).

Movant filed a notice of appeal on September 28, 2009. (D.E. 310). On appeal, he challenged whether the record was sufficient to provide the necessary factual basis for his guilty plea to the § 924(c) charge. (*See* D.E. 393). The Sixth Circuit dismissed his appeal based on the waiver provision of the plea agreement. (*Id.*).

Despite a term of the plea agreement barring Movant from collaterally attacking his guilty plea, conviction, and sentence (D.E. 218 ¶ 8), Movant has filed the instant motion doing just that. He argues his attorney rendered ineffective assistance by failing to preserve the right to appeal the sufficiency of evidence with respect to the § 924(c) charge, by failing to review the presentence report with Movant prior to sentencing, and by failing to argue that all real properties owned by Movant should not be subject to forfeiture. (*See* D.E. 399).

2

## II.  DISCUSSION

Generally speaking, a prisoner has a statutory right to collaterally attack his conviction or sentence.  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights").  For a federal prisoner to prevail on a § 2255 claim, he must show that:

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255.  If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings," *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  However, if the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process."  *Id.* (quotation omitted).

Like other statutory and constitutional rights, the right to collaterally attack a sentence or conviction may be waived.  *Id.* at 489 ("a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief").  Only where the movant "articulate[s] a basis for attacking the validity of his plea" may he escape the consequences of the waiver provision.  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (noting that "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself").  Thus, a movant who has otherwise waived the right to collaterally attack his conviction

and sentence, must "raise[] a challenge that goes to the validity of his waiver, such as a claim that the waiver was involuntary or the product of ineffective assistance of counsel." *Id.*

> Movant's plea agreement states:
>
> The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution. (D.E. 218 ¶ 8).
>
> The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, and that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary. (*Id.* ¶ 14).

In its motion to dismiss, the United States argues that the Court lacks jurisdiction over Movant's § 2255 motion because he entered a knowing and voluntary guilty plea and validly waived the right to appeal and collaterally attack his guilty plea, conviction, and sentence. (D.E. 405). The Government states, "The Court very clearly determined that Jones understood the plea agreement, that the court discussed the plea agreement in the proceedings and that defense counsel had discussed the plea agreement with him." (*Id.* at 6).

Movant argues that his entry into the plea agreement was "misguided" and that he was incapable of entering a "knowing and voluntary plea." (D.E. 408). The crux of Movant's argument is that he did not understand the plea agreement, specifically § 924(c) charge to which he pled guilty. (*See* D.E. 399). He claims that his lack of understanding was apparent during rearraignment proceedings. (*Id.*). Movant argues that a review of the facts supporting his § 2255 motion reveals "a record ladened [sic] with incidents of Jones [sic] lack of knowledge of the consequences of his plea agreement." (D.E. 408 at 3).

Movant's arguments are not supported by the record. Under Sixth Circuit precedent, a court is not required to fully review the merits of a § 2255 motion if Movant's claim that his plea/waiver was invalid has "no basis" in the record. *United States v. Thornton,* 2007 WL

4

1741780, at *7 (E.D. Ky. May 25, 2007) (Wier, M.J.) (citing *In re Acosta*, 480 F.3d at 421), *report and recommendation adopted by* 2007 WL 1742160 (E.D. Ky. Jun. 12, 2007). If Movant's claim that his plea was not knowing or voluntary has no legal or factual basis, "the Court may then enforce the waiver provision and preclude further review of these arguments." (*Id.*).

Movant's claim that he did not understand the plea agreement, particularly § 924(c) charge, is contradicted by the record. District Judge Caldwell conducted a rearraignment proceeding and specifically advised Movant of his rights as required by Federal Rule of Criminal Procedure 11. (*See* D.E. 321). The Rule 11 colloquy is designed to ensure that a defendant's plea is knowing and voluntary. *See United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988) ("Rule 11 of the Fed. R. Crim. P. has been carefully drafted and amended to the end that the guilty plea process be precise to make certain that a defendant pleading guilty understands the nature of his applicable constitutional rights, that his plea of guilty is voluntary with the full understanding of the nature of the crime charged and the consequences of his guilty plea and that there is a factual basis for the crime to which the plea is being offered.").

Here, the Court thoroughly satisfied these Rule 11 requirements. The Court inquired into Movant's competency to proceed. (D.E. 321 at 6:1-6). The Court also verified that Movant was entering into the plea voluntarily, and was pleading guilty because he was, in fact, guilty. (*Id.* at 5:21-25). The Court asked whether Movant had received a copy of the plea agreement, whether he had an opportunity to read it, and whether he understood it:

> THE COURT: With Mr. Butler's help, have you been able to comprehend all the legal documents that you've been presented with in this case?
>
> THE DEFENDANT: Yeah, most of it I guess I understood.

5

| | |
|---|---|
| THE COURT: | For example, when you got the plea agreement there in front of you did Mr. Butler go over it with you, and between his explanation and what you can read do you understand it? |
| THE DEFENDANT: | No, we didn't go over it yet, no. |
| | Did we? |
| MR. BUTLER: | We went over it at Carter County. |
| THE DEFENDANT: | We went over a few things. Some of it, yeah. |
| THE COURT: | We will go over it here. Mr. Butler, you have been over it with him, haven't you? |
| MR. BUTLER: | Yes, your Honor. |
| THE COURT: | Just to be sure that you understand the terms of this plea, Mr. Jones, I'm going to go over it *in detail* with you here today. |

(*Id.* at 5:2-20) (emphasis added).

Movant contends that the above exchange is evidence of his lack of understanding of the charges to which he pled guilty, rendering his guilty plea and waiver invalid. Although Movant initially seemed unsure of whether he had read and discussed the plea agreement with his attorney, his attorney verified that he explained the plea agreement to Movant. Further, "the Sixth Circuit has held that a trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea." *United States v. Harding*, 2008 WL 4073393, at *5 (E.D. Ky. 2008) (citing *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999)) ("Although Harding now claims that his counsel did not fully explain the terms of the plea agreement or the effect of its waiver provisions, the record reflects that, at the time of the plea, Harding told the Court that he understood the waiver. Therefore, any deficiencies in counsel's performance were cured by the colloquy with the Court during the plea hearing."). Thus, any

6

misunderstanding or confusion on Movant's part would have been cured when Judge Caldwell thoroughly explained the plea agreement to Movant after the United States recited the essential terms of the agreement aloud in open court:

> THE COURT: Now, there's a written plea agreement in this case, and Mr. Butler has two documents there in front of you. One is entitled the plea agreement and the other is a sealed supplement.
>
> And let me ask if you signed both of those documents.
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. I'm going to take the documents. Mr. Marshal.
>
> Mr. Butler, do you have copies of these documents to follow along with?
>
> MR. BUTLER: Yes, your Honor, we do.
>
> THE COURT: Mr. Jones, I want to be sure both you and I understand the nature of this plea agreement and the consequences of your plea, so I'm going to go over this with you here in court and then we're going to talk about a few other things.
>
> Mr. West, would you please summarize the plea agreement for us here in open court. And listen carefully, Mr. Jones. You've got a copy of it there. Mr. West is going to summarize this plea agreement for us. We're going to go over it.

[The Attorney for the United States proceeded to accurately recite the essential terms of Movant's plea agreement in open court.]

> THE COURT: Now, Mr. Jones, it says that you are going to plead guilty to two crimes: That you, along with others, agreed to distribute oxycodone, and that you knew what was going on with the other people and deliberately participated in it.
>
> It also says that you are going to plead guilty to possessing a firearm, knowingly possessing a firearm in the furtherance of the drug-trafficking crime.
>
> Now, are those the charges you are going to plead guilty to today?
>
> THE DEFENDANT: Yes.

7

| | |
|---|---|
| THE COURT: | Now, in Paragraph 3 of your plea agreement, it describes some facts that the United States says that it could prove and that you admit. And let's go over them, and I'll try to just paraphrase them without reading them in detail. |
| | It obviously states that you were acquainted with a fellow by the name of Joseph Hall, who is one of your codefendants. Is that right? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And you would get oxycodone from Joseph Hall and other people. Is that right? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And then would you redistribute that oxycodone in the Perry County area of eastern Kentucky? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Now, it says that Joseph Hall would charge you $50 a pill, and then you would resell the pills for $80 a pill. Is that right? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Now, it also says that in your dealing with Joseph Hall, this kind of agreement you guys had, that you sold OxyContin – or oxycodone to a cooperating witness for law enforcement and that on January 15, 2008, you sold five oxy 40 tablets and one oxy 80 tablet. And then on January 24th, you sold three oxy 40s and two oxy 80s. And on January the 20th, you sold three oxy 40s and two oxy 80s. All of that was in Perry County. Is that true? |
| THE DEFENDANT: | True. |
| THE COURT: | Now, police went to search your house, I guess, at some point, and they found some prescription bottles in and around a safe that had some oxycodone, hydrocodone, and other controlled substances. They also found a gun near the controlled substances. And there was also $12,449 seized. Is that true? |
| THE DEFENDANT: | Yes, ma'am. |

8

THE COURT: Now, you also admitted that you were getting oxycodone from another individual who was in Ohio. Is that correct? Had you – before you met Joe Hall, did you get oxycodone from somebody in Ohio?

THE DEFENDANT: Yes.

THE COURT: But you had dealt with Joe Hall after that, and that was for about a year. Is that right?

THE DEFENDANT: Yeah, about eight or nine months.

THE COURT: Okay. Something less than a year?

THE DEFENDANT: Yeah, it was less than a year.

THE COURT: Okay. And did you talk to Joe Hall on the phone about drugs?

THE DEFENDANT: Well, he told me he was coming by. I didn't never – you know, I didn't….

THE COURT: Did he charge you money for drugs?

THE DEFENDANT: Yeah.

THE COURT: And is it true then that you gave him 50 bucks and then you could resell them for $80 per pill?

THE DEFENDANT: Yeah – yes.

THE COURT: Okay. And the plea agreement says that during the time frame listed in Count 1, which is sometime between January 2006 and May 2008, that you would get about – that you would get oxy 80s from Joe Hall and others on an infrequent basis. That means occasionally, not often. Is that true?

THE DEFENDANT: Yeah – yes, ma'am.

THE COURT: And it says the amounts you got from Joe Hall and others and that you redistributed was about 300 80 oxy pills?

THE DEFENDANT: Yes.

THE COURT: Is that about right?

THE DEFENDANT: Yeah. Yes, ma'am.

9

(*Id.* at 7:1-13:11).

Thus, Movant's claim that he did not understand the plea agreement and the § 924(c) has no basis in the record. The record clearly shows that the Court discussed the plea agreement and the charges contained therein in detail. Movant stated, under oath, that the plea agreement had been explained to him by both the Court and previously by his attorney. (*Id.* at 17:17-18:2).

The Court also explained the constitutional rights Movant would be giving up by pleading guilty, including the right to a trial, the right to counsel, and the right to cross-examine witnesses. (*Id.* at 19:3-15). Likewise, the Court informed Movant that he would be giving up certain civil rights by pleading guilty, including the right to vote, the right to sit on a jury, the right to carry a firearm and the right to hold public office. (*Id.* at 6:20-25).

The Court also discussed the maximum statutory penalties Movant faced for each count contained in the plea agreement. (*Id.* at 13:16-14:12). Furthermore, the Court thoroughly explained the operation of the Sentencing Guidelines to Movant and the process used to determine Movant's guideline range. (*Id.* at 14:13-16:1). Before pleading guilty, Movant acknowledged that no promises other than those contained in the plea agreement were made to induce Movant to enter a plea of guilty:

> THE COURT: Now, in Paragraph 12, it says that this plea agreement that we're going over right now and a separate document called a sealed supplement, which we will talk about in just a minute, are the only agreements that you have with the government.
>
> In other words, nobody has promised you anything that we're not going to talk about right here in court today. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And is that true?

10

    THE DEFENDANT:    Yes.

    THE COURT:    Also, it says that you understand what we're talking about here, which is your plea agreement, and that you've entered into it voluntarily and that it's been explained to you. Is that true?

    THE DEFENDANT:    True.

(*Id.* at 17:7-21). After this colloquy, Movant entered a plea of guilty. (*Id.* at 19:16-18). The Court made the following findings and accepted Movant's guilty plea:

> It is the finding of this Court in the mater of the United States of America versus Manuel Ray Jones that Mr. Jones is competent of making an informed plea. He is aware of the charges that have been brought against him and of the consequences of his plea. The Court finds that his plea is made voluntarily and that it's supported by an independent basis in fact containing all the essential elements of the offense.
>
> Therefore, the plea is accepted and Mr. Jones is adjudged guilty.

(*Id.* at 19:19-20:2).

During the Rule 11 colloquy, Movant stated, under oath, that he understood that by entering a plea of guilty, he would be waiving his right to appeal or collaterally attack his guilty plea, conviction, and sentence:

    THE COURT:    In your plea agreement in Paragraph 8 – and this is a real important provision – it says that you give up your right to file an appeal or a separate lawsuit attacking your guilty plea, your conviction, and the punishment this Court imposes. Do you understand that?

    THE DEFENDANT:    Yes.

(*Id.* at 16:4-9). Thus, Movant stated that he understood the waiver provision, and the Court must accept this statement as true. *See Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Jackson v. United States,* 512 F.2d 772, 773 (5th Cir. 1975)).

11

In his response to the Government's motion to dismiss, Movant argues that there is no nexus between his case and several cases cited by the United States. (*See* D.E. 408). The Court finds that the cases cited to by the United States stand for the general proposition that a defendant may waive his right to appeal or collaterally attack his guilty plea, conviction, and sentence, and are therefore appropriately relied upon by the Government.

The Court's review of the record indicates that Movant's waiver of his right to bring a § 2255 proceeding was knowing and voluntary. Thus, the waiver provision of his plea agreement is binding and this collateral attack is therefore barred. The Court, therefore, will not address the arguments raised in Movant's § 2255 motion.

### III. CERTIFICATE OF APPEALABILITY

Where a movant's § 2255 motion is denied on procedural grounds, a Certificate of Appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Movant's § 2255 motion should be denied on procedural grounds—that is, pursuant to a valid and enforceable waiver. No Certificate of Appealability should issue because no jurist of reason would debate whether the § 2255 motion stated a valid claim. A movant is simply not entitled to collaterally challenge his guilty plea, conviction, or sentence where, as here, his plea was knowing and voluntary, and he waived the right to make such a collateral attack.

### IV. CONCLUSION

Having reviewed Movant's § 2255 motion, the Court concludes that Movant has failed to make the requisite showing that would entitle him to relief. Therefore, the Court

**RECOMMENDS** that the Government's motion to dismiss (D.E. 405) be **GRANTED**, and Movant's motion to vacate his conviction and sentence (D.E. 399) be **DENIED**. The Court also recommends that the District Court **DENY** a Certificate of Appealability.

Movant also filed a motion for summary judgment, arguing that the United States did not respond to his § 2255 motion within the 40 day time period ordered by the Court. (D.E. 403). The Court notes that the motion for summary judgment was filed *after* the Court granted the United States until January 23, 2012, to file a response to Movant's motion to vacate. (*See* D.E. 402). On January 23, the United States responded by filing the motion to dismiss discussed herein. (*See* D.E. 405). Therefore, the Court **RECOMMENDS** that Movant's motion for summary judgment (D.E. 403) be **DENIED.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 26th day of April, 2012.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge